# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

v.

ANTWAIN CHILDS, DOB 11/12/1981
DANA CHILDS, DOB 08/24/1989, and
JESSE WHITE, DOB 08/12/1976

CRIMINAL COMPLAINT

CASE NUMBER:

**08-M-0296**

I, Loren Common, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. Beginning sometime on or about November 10, 2008, and continuing until on or about November 24, 2008, in the State and Eastern District of Wisconsin and elsewhere, ANTWAIN CHILDS, DANA CHILDS and JESSE WHITE did knowingly conspire with each other and others known and unknown to possess with intent to distribute five kilograms or more of a mixture and substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846; 841(a)(1), & 841(b)(1)(A).

I further state that I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, Department of Justice, and that this complaint is based on the facts contained in the attached affidavit.

Continued on the attached sheet and made a part hereof: ✔ Yes

Signature of Complainant

Sworn to before me and subscribed in my presence,

November 25, 2008            at Milwaukee, Wisconsin
Date                         City and State

Patricia J. Gorence, U.S. Magistrate Judge
Name & Title of Judicial Officer         Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Loren S. Common, being duly sworn on oath, state as follows:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, and Firearms, United States Department of Justice, and I have been so employed for seven years. Previously I was an agent with the Internal Revenue Service for nine years. As part of my duties, I investigate violations of federal criminal laws, including 18 U.S.C. §§ 922, 924, 1951 (firearms and Hobbs Act), and 21 U.S.C. §§ 841 and 846 (offenses involving trafficking in controlled substances), and related offenses.

2. Since this affidavit is submitted only for the limited purpose of securing the criminal complaint, I have not set forth each and every fact known to me concerning this investigation. I have only included what I believe are facts sufficient to establish probable cause for the complaint sought against ANTWAIN CHILDS, DANA CHILDS, and JESSE WHITE. I have also included any material which I believe is exculpatory and of which I have knowledge. All of the information contained herein is based upon my personal knowledge and investigation, or upon information supplied to me by other law enforcement officers, a confidential informant (CI), or citizen witnesses, all of whom I believe to be truthful and reliable. Everything set forth herein is true and correct to the best of my knowledge and belief.

3. The CI used in this investigation is believed to be truthful and reliable, as case agents monitored and verified the CI's actions and statements through surveillance and audio and video recording. In addition, I am aware that this CI has been used in other investigations by the ATF and other agencies and the CI's cooperation has assisted in the investigation, arrest and/or federal prosecution of over five other individuals. While some of these cases are still pending, several of these individuals have been convicted of their charges.

1

4. On November 10, 2008, the CI reported to affiant that the CI had spoken with an acquaintance, Antwain M. CHILDS, a.k.a. "Twin," DOB 11/12/1981, who indicated that he was looking for a target to rob. The CI further reported that the CI also met with an individual known to ANTWAIN CHILDS and the CI by the street name of "Lurch," later identified as Jesse T. WHITE, DOB 08/12/1976, who also indicated that he wanted to rob someone. The CI informed both ANTWAIN CHILDS and WHITE that the CI knew of someone and would get back to them.

5. On November 13, 2008, the CI, equipped with a recording device and transmitter and acting under the surveillance, direction and control of ATF special agents, met with ANTWAIN CHILDS to discuss a possible robbery scenario. The CI related to ANTWAIN CHILDS that a cousin of the CI set up drug transactions in Chicago for cocaine that arrived from New York and that the CI's cousin wanted someone to rob the shipment. The CI further related to ANTWAIN CHILDS that the CI could arrange to have a shipment of cocaine delivered to Milwaukee, Wisconsin. The CI then explained that there would be two unwitting females driving the cocaine in one vehicle and several armed males following in a separate vehicle. The CI stated that the CI would pick up the CI's cousin in Chicago the next day and bring him to Milwaukee.

6. On November 14, 2008, at approximately 4:15 P.M., the CI, while at the Milwaukee ATF office, placed a monitored and recorded cellular telephone call to WHITE at (414) 333-0316. The CI asked WHITE if he wanted to go out for a drink with the CI, but WHITE stated that he did not drink. The CI then advised WHITE that the CI needed to meet with WHITE "one on one" and WHITE related that he lived in the area of Fond du Lac and Villard and would meet the CI somewhere in that area of the city. The CI was then again fitted

2

with a recording device and transmitter, and then got into a vehicle with an undercover (UC) ATF agent posing as the CI's cousin and drove to the area of 51st Street and Villard, Milwaukee while under surveillance. At approximately 5:31 P.M., WHITE called the CI and advised that he was on 60th Street and Custer Avenue.

7. A few minutes later, the CI and the UC located WHITE at 61st and Custer, and WHITE entered the rear passenger seat of their vehicle. The CI introduced the UC to WHITE as the CI's "fam" from New York who needed someone to "bust a move" (rob) people coming from New York with "work" (narcotics). The CI stated that the shipment was coming from New York City and going to Chicago through Milwaukee and needed to be "taken off" (robbed) before it reached Chicago. WHITE immediately stated that he had "pistols on deck and everything" and then asked, "what's the work?" referring to what he would get from the robbery. The UC stated that WHITE and whomever else WHITE could get involved would receive seven "bricks" (kilograms) of cocaine. WHITE agreed to the arrangement, and again stated that he had pistols available for the robbery. The UC then asked WHITE if he had more time to hear of the plot, and WHITE responded, "I'm listenin' bro, I'm a real nigga ... I'm stand up ... I don't play no games." WHITE then stated that, "[i]f they don't give that shit up they'll be dead as a motherfucker ... a move like that ... I don't fuck around, I'll shoot first."

8. The CI then asked WHITE to make sure he didn't do any "rat shit," meaning to double-cross anyone, and WHITE replied, "I don't kick it like that ... I'm true 100 on the G," meaning that he was trustworthy. The UC then described the plot to WHITE in more detail and asked if he was still "on board" and WHITE replied that he was "cool with all that" and advised the CI and UC to just call him. WHITE stated again that he had "plenty of pistols, I'm talkin' about fat shit, I'm talking about shit get a nigga sent to the Feds on, mad toys." The CI then

3

explained to WHITE that the CI and the UC would also be involved in the robbery, and WHITE replied that he "got enough pistols for four or five niggas man" and that all he wanted was to get his share and remain trustworthy. WHITE stated, "If all them motherfucker that are comin' down got to get killed, I'm gonna shoot the shit out they ass first." The UC explained that the "twins" (ANTWAIN and DANA CHILDS) would also be involved, and WHITE replied that they were his cousins. The UC then asked if WHITE would be available in a week or two, and WHITE stated that he was, but had a child with him in the mornings. WHITE then exited the vehicle and thanked the CI for keeping him in mind.

9. Also on November 14, 2008, at approximately 7:37 P.M., the CI, equipped with a recording device and transmitter and in the same vehicle, and accompanied by the UC in the same vehicle, met with ANTWAIN CHILDS. The CI introduced the UC to ANTWAIN CHILDS as his cousin, and stated that the CI had already spoken to WHITE about the robbery. The UC asked ANTWAIN CHILDS if he knew what was going on, and he responded, "yeah." The UC explained that he had some "work" coming from New York and needed some people to rob whomever brought it in, and asked if ANTWAIN CHILDS was "down" and he responded, "yeah." ANTWAIN CHILDS was also advised that up to five people could be bringing in the shipment and that weapons would be needed, and he again responded, "yeah." Later, the UC asked ANTWAIN CHILDS if he would be around in a week or two, and he responded, "yeah" before exiting the vehicle.

10. On November 18, 2008, at approximately 3:15 P.M., the CI placed a monitored and recorded call to ANTWAIN CHILDS at (414) 254-0938. During the call, the CI asked ANTWAIN CHILDS if he had weapons secured for the robbery, and he advised that he had the following firearms: a 32-shot 9mm pistol with laser sights; a Millennium .45; an H&K .45; a .38

4

pistol, and a Mac-90. ANTWAIN CHILDS stated that the 9mm, and the two .45s were located at a residence on Cherry Street, that the .38 was at his residence on 32nd Street, and that the Mac-90 was at his cousin's house. All locations are in the City of Milwaukee.

11. On November 22, 2008, at approximately 9:00 P.M., the CI placed a monitored and recorded call to WHITE at (414) 333-0316 and asked to meet, and WHITE responded that he was in the area of 29th and Cherry. The CI and UC, who was equipped with a video and audio recording device, then traveled under surveillance to meet WHITE, who was located in his own car in the area of 20th and Galena. At WHITE's direction, the CI and UC then followed WHITE to ANTWAIN CHILDS' home at 32nd and Wisconsin. Once there, ANTWAIN CHILDS entered the CI and UC's car, and DANA CHILDS, DOB 08/24/1989, entered WHITE's vehicle. The group then traveled to a restaurant at 2220 West Wisconsin Avenue, Milwaukee. Inside, the group took a booth and ate and talked. During the conversation, they discussed the upcoming robbery, and how each subject, including ANTWAIN CHILDS, DANA CHILDS and WHITE, thought the deal should go down. The UC further stated that the group would receive six kilograms of cocaine for the robbery. The UC stated that the deal would occur at a storage unit off the highway. DANA CHILDS suggested that the group pick a unit that had only one entrance. The group also discussed the kinds of firearms they would bring - for example, ANTWAIN CHILDS and WHITE debated whether to take the laser sight off of the Glock handgun. The group further talked about whether they would need to shoot the victims of the robbery.

12. On Sunday, November 23, 2008, at approximately 10:48 P.M., the CI placed a monitored and recorded call to WHITE at (414) 333-0316. During the call, WHITE advised the CI that they were going to retrieve "bangers" (firearms) from a "stash spot" and take them to

5

"Twins crib" (the home of ANTWAIN CHILDS). At approximately 11:29 P.M., the CI was equipped with a recording device and transmitter and while under surveillance, drove to the area of 66th and Villard, Milwaukee. WHITE then entered the vehicle, and discussed with the CI WHITE's concern about the amount of "keys" (kilograms of cocaine) that the group would be receiving for their part in the robbery. WHITE stated that he was originally told the group would be receiving seven kilograms, and later was told they would get six kilograms. Eventually, WHITE stated that he wouldn't be greedy and would take six kilograms. At approximately 12:13 A.M., the CI drove to the area of 14th Street and Kilbourne Avenue, Milwaukee. WHITE exited the vehicle and returned a short time later with two firearms: a Glock Model 19 9mm pistol with serial number AU-H915 and a 30-round extended magazine containing 20 rounds and laser sights; and a H&K Model USP Compact .45 pistol with serial number 29-003367 loaded with 8 rounds. WHITE placed these weapons in the rear storage compartment of the CI's vehicle, and advised the CI to hold on to the weapons until they were needed, and to take WHITE home. Enroute back to 66th and Villard, WHITE and the CI talked about how they would probably have to "pull up pistols on the first guys."

13. Affiant states that he then took the firearms to the City of Milwaukee Police Department's armorer and had the firing pins on each weapon filed down or replaced to render the weapons nonfunctional.

14. On November 24, 2008, the CI had telephonic conversation with A. CHILDS and WHITE and confirmed that the group was on standby. The CI asked WHITE if he had his weapon, and WHITE stated that the weapon was at the CHILDS' residence on 32nd Street. The CI told WHITE to go to the CHILDS' residence so the group could be picked up all at once. Later, at approximately 10:30 P.M., ANTWAIN CHILDS called the CI and asked if the CI was

6

ready. The CI responded that the CI would leave shortly. At approximately 11:00 P.M., the CI, who was wearing a transmitter, picked up ANTWAIN CHILDS, DANA CHILDS and WHITE at the residence on 32nd Street. At that time, DANA CHILDS placed a .38 revolver in the rear storage area of the vehicle. The group then drove from 32nd and Wisconsin to the Mitchell Park Domes to meet the UC.

15. Upon arrival, the UC, also wearing a transmitter, approached the CI's vehicle and asked if everyone was ready. ANTWAIN CHILDS, DANA CHILDS and WHITE each indicated that they were ready, and the UC returned to his car. The UC then led the CI and the group to the E-Z Storage at 1201 West Canal Street, Milwaukee. The UC then opened the gate, and the CI and the group followed the UC into the facility. The UC then drove to an area pre-designated by the ATF, and the CI and UC exited their vehicles. At that point, the UC gave a pre-arranged signal, and the subjects were arrested.

16. ANTWAIN CHILDS was subsequently advised of his rights and waived them. In a statement to case agents, he admitted to intending to commit a robbery to obtain kilograms of cocaine.

17. DANA CHILDS was subsequently advised of his rights and waived them. He stated that he overheard the plan, went to dinner at the restaurant with the others and helped plan out the robbery, and that ANTWAIN CHILDS gave him the .38 revolver to bring along. However, DANA CHILDS maintained that he believed that nothing was actually going to happen, and that he only went along to get a free dinner.

18. WHITE was subsequently advised of his rights and waived them. WHITE stated that he was approached with a plan to commit a robbery to obtain kilograms of cocaine, and went along with the plan. WHITE apologized to the agents for his actions.

7

19. Based on the above information, I believe that probable cause exists that:

Beginning sometime on or about November 10, 2008, and continuing until on or about November 24, 2008, in the State and Eastern District of Wisconsin and elsewhere, ANTWAIN CHILDS, DANA CHILDS and JESSE WHITE did knowingly conspire with each other and others known and unknown to possess with intent to distribute five kilograms or more of a mixture and substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846; 841(a)(1), & 841(b)(1)(A).